| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:07cr31 (AHN) |
| | : | |
| v. | : | |
| | : | |
| PHILIP D. RUSSELL | : | JULY 2, 2007 |

### BRIEF OF THE AMICUS CURIAE, CONNECTICUT CRIMINAL DEFENSE LAWYERS ASSOCIATION, IN SUPPORT OF THE DEFENDANT'S MOTIONS TO DISMISS THE INDICTMENT

Title 18 of the United States Code §§ 1512 (c)(1) and 1519 are unconstitutionally vague as applied to the conduct of attorneys such as Mr. Russell because they fail to specify the requisite intent necessary for violation of each statute and they criminalize lawful as well as unlawful conduct. Section 1512(c)(1) proscribes "corrupt" conduct, while § 1519 proscribes "knowing" conduct; however, neither statute indicates whether it requires the actor to be motivated solely by unlawful intent as opposed to an intent to further a legitimate interest, such as an attorney's interest and duty to protect his client's constitutional rights prior to a criminal investigation, during an investigation, or after criminal charges have been filed.

Absent a requirement that the Government allege and prove a "nexus" between the allegedly obstructive conduct and an official government proceeding, it is impossible under these statutes to decipher the line between conduct that is lawfully undertaken in representation of a client, and conduct that is undertaken solely for unlawful purposes. If the Government is not required to allege and prove the "nexus" requirement with regard to both statutes, their indiscriminatory application to conduct such as Mr. Russell's will force attorneys to choose between their duty of zealous representation and avoiding prosecution.

### I.    Introduction

Title 18 U.S.C. § 1512 provides:

(c) Whoever corruptly-- (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or

availability for use in an official proceeding... shall be fined under this title or imprisoned not more than 20 years, or both.

Title 18 U.S.C. § 1519 provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

Sections 1512(c)(1) and 1519 are two relatively new provisions born from the Sarbanes-Oxley Act. The Act itself was a direct response to the collapse of the Enron Corporation and to the conduct of its accounting firm, Arthur Andersen, which was charged with obstructing justice by shredding documents in anticipation of a possible investigation by the U.S. Securities and Exchange Commission. See Spalding and Morrison, *Criminal Liability for Document Shredding After Arthur Andersen, LLP*, 43 AM. BUS. L.J. 647, 648-651 (2006); Note, *Anticipatory Obstruction of Justice: Pre-Emptive Document Destruction Under The Sarbanes-Oxley Anti-Shredding Statutes*, 89 CORNELL L. REV. 1519 (2004). The specific response by Congress included enactment of provisions in the Sarbanes-Oxley amendment that imposed or increased sanctions on obstructive *document* destruction by *corporations* and *accounting firms*. (Emphasis added.) Id.

Prior to the Sarbanes-Oxley Act, prosecutions under the three federal obstruction-of-justice statutes prohibiting document destruction, were essentially restricted to defendants who could be shown to have knowledge of the proceedings against them. See 89 CORNELL L. REV. at 1529. "Even courts that stretched the language of § 1512(b) to impose criminal liability early in the pre-proceeding area balked at imposing criminal liability where the government could not prove the defendant's knowledge of the particular proceedings he obstructed." Id.

Application of 18 U.S.C. §§ 1512(c)(1) and 1519 to Mr. Russell's conduct effectively criminalizes the role of the attorney as a zealous advocate fulfilling his ethical duty of constitutional dimension to protect his client from self-incrimination. The conduct which the Government seeks to criminalize involves Mr. Russell's representation of a client, a church in

2

Greenwich, Connecticut (hereinafter "Church"), upon its discovery of images of naked boys on a computer used by the Church's choirmaster, Robert Tate. Pursuant to the Indictment, a Church employee who was using the computer discovered the images. Once aware of these images, Church officials took possession of the computer, sealed it, and retained Mr. Russell.

According to the Indictment, on the date following his engagement by the Church, Mr. Russell took possession of the computer and destroyed it. As the Church's attorney, Mr. Russell was undoubtedly sensitive to his clients' criminal liability, or more particularly, to that of Church officials who took possession of the computer. Specifically, they could have been charged with a violation of 18 U.S.C. § 2252A(5)(B), which criminalizes knowing possession of child pornography.[1]

If the Court upholds the Government's application of §§ 1512 and 1519 to Mr. Russell's conduct, it will open the flood gates enabling the Government to criminalize a broad range of traditionally legitimate attorney advice and appropriately zealous advocacy. See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) ("sound legal advice or advocacy serves public ends"). If attorneys are forced to incriminate their clients in an effort to avoid being charged with obstruction of justice themselves, zealous advocacy becomes impossible, the attorney-client relationship becomes imperiled, and the careful balance of our adversarial system is disrupted.

Justice is best served when individuals who are either charged with a criminal offense or facing exposure to criminal charges receive zealous representation from an aggressive advocate. To fulfill this role, counsel must not be hamstrung by fear of personal consequences to himself or herself, but instead free to advance the undivided interests of the client. Through zealous representation of their clients, lawyers secure the rights granted by the Constitution. Application of §§ 1512 and 1519 to conduct such as Mr. Russell's undermines these values and the sanctity of

---

[1] 18 USC § 2252A(5)(B) makes it a crime for any person to "... knowingly possesses any ...computer disk, or any other material that contains an image of child pornography that has been... transported in interstate or foreign commerce by any means, including by computer..."

the attorney-client relationship by allowing outside forces to dictate counsel's measure of advocacy.

## II.    Fair Notice and The Void For Vagueness Doctrine.

"In this [C]ountry we do not tolerate criminal statutes like those of the emperor Caligula, who wrote his laws in very fine print and displayed them high on tall pillars, the more effectively to ensnare people." Commonwealth v. Stenhach, 514 A.2d 114, 119, 356 Pa. Super. 5 (1986), appeal denied, 534 A.2d 769, 517 Pa. 589 (1987) (quoting 1 W. Blackstone, Commentaries 46). The Due Process Clause of the fifth and fourteenth amendments requires that the legislature specify the elements of criminal offenses so that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." United States v. Lanier, 520 U.S. 259, 265 (1997) (citing Bouie v. City of Columbia, 378 U.S. 347, 351 (1964); quoting United States v. Harris, 347 U.S. 612, 617 (1954)); see also United States v. Handakas, 286 F.3d 92, 101, cert. denied, 537 U.S. 894 (2d Cir. 2002), overruled on other grounds, United States v. Rybicki, 354 F.3d 124 (2003), cert. denied, 543 U.S. 809 (2004). As a matter of due process then, a criminal statute that fails to provide a person of ordinary intelligence with fair notice that his contemplated conduct is forbidden, or is so indefinite that it encourages arbitrary and erratic arrests and convictions, is void for vagueness. (Internal quotation marks and citations omitted) Coluatti, et al. v. Franklin, et al., 439 U.S. 379, 390-391 (1979).

Consequently, in analyzing whether a statute is void-for-vagueness, courts must consider whether (1) a penal statute defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited, *and* (2) whether the statute defines a criminal offense in a manner that does not encourage arbitrary and discriminatory enforcement. Handakas, 286 F.3d at 101. In an "as-applied" vagueness challenge, a court must evaluate the challenged regulation "in light of the specific facts of the case at hand..." Inturri v. City, 365 F.Supp. 2d 240, 253 (D. Conn. 2005), aff'd., 165 Fed. Appx. 66, 2006 U.S. App. LEXIS 2538 (2d Cir. 2000) (citing Rybicki, 354 F.3d at 129). Moreover, when considering an "as-applied" challenge,

a court must consider the context in which the regulation was enforced, i.e., it must evaluate the underlying conduct by reference to the norms of the subject community. Id. at 254-255.

III. **Absent Application Of The Aguilar Nexus, §§ 1512(c)(1) and 1519 Are Unconstitutionally Vague As Applied To The Conduct Of An Attorney In Representation Of His Client.**

A. **United States Supreme Court and Second Circuit Caselaw Support Application Of The Aguilar "Nexus" To 18 U.S.C. §§ 1512(c)(1) and 1519.**

The United States Supreme Court has, in recent years, twice amplified the federal obstruction statutes without stating that they were unconstitutionally vague prior to judicial augmentation. A fair reading of these cases, however, leads to the ineluctable conclusion that judicial interpretation has saved some federal obstruction provisions from eventually being struck down as unconstitutionally vague in certain applications. See United States v. Aguilar, 515 U.S. 593 (1995); Arthur Andersen, LLP v. United States, 544 U.S. 696 (2005).

In United States v. Aguilar, 515 U.S. 593, 599-602 (1995), the Supreme Court established parameters for the "catch-all" language in § 1503.[2] The Court upheld the reversal of Aguilar's conviction for lying to FBI agents during an investigation into his conduct, for which a grand jury had convened. Aguilar, 515 U.S. at 599-602. The Court held that the defendant's obstructive act of lying to investigators was not sufficiently connected to the grand jury proceedings to uphold his conviction because there was no "nexus" between the obstructive act and the proceedings that the

---

[2] Title 18 U.S.C. § 1503 provides:

Whoever corruptly, or by threats or force...endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $ 5,000 or imprisoned not more than five years, or both.

defendant sought to impede. Id.; see also United States v. Schwarz, 283 F.3d 76, 108-109 (2d Cir. 2002) (Second Circuit also applied Aguilar nexus to § 1503).

The Court held that the "nexus" element as applied to § 1503 required that "the act must have a relationship in time, causation, or logic with the judicial proceedings" and that "the endeavor must have the 'natural and probable effect' of interfering with the due administration of justice." Id. Consequently, under this approach, the accused must take action with an intent to influence such proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority. Id. at 600-602. Moreover, the endeavor must have the "natural and probable effect" of interfering with the due administration of justice, and a person lacking knowledge that his actions are likely to affect a pending proceeding necessarily lacks the requisite intent to obstruct. Id.

The Second Circuit Court of Appeals has extended the Aguilar nexus to 18 U.S.C §§ 1512(c)(2) and 1505. In United States v. Reich, 479 F.3d 179 (2d Cir. 2007), the defendant was convicted under 18 U.S.C. § 1512 (c)(2) which provides: "Whoever corruptly... obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." The Court held that § 1512(c)(2) "incorporates the nexus requirement as articulated in Aguilar." United States v. Reich, 479 F.3d 179, 186 (2d Cir. 2007). Similarly, in United States v. Quattrone, 441 F.3d 153 (2d Cir. 2006), pet. dismissed, 2007 U.S. App. LEXIS 11973 (2d Cir. N.Y. May 21, 2007), the Second Circuit held that the Aguilar nexus applied to § 1505, which subjects to criminal liability one who "corruptly... influences, obstructs, or impedes ...the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States..." United States v. Quattrone, 441 F.3d 153, 170-172 (2d Cir. 2006).

In Arthur Andersen, LLP v. United States, 544 U.S. 696 (2005) the United States Supreme Court once again stepped in to interpret and clarify the meaning of another obstruction statute, § 1512(b)(2)(A), which provides:

> Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . cause or induce any person to . . . withhold testimony, or withhold a record, document, or other object, from an official proceeding [or] alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding . . . shall be fined under this title or imprisoned not more than ten years, or both

In Andersen, the Government argued that the District Court appropriately instructed the jury on the meaning of "corruptly" where the court declined to include "dishonestly" in the definition but instead told the jury to convict if it found that the petitioner intended to "subvert, undermine, or impede" governmental factfinding by suggesting to its employees that they enforce a document retention policy. Arthur Andersen, LLP v. United States, 544 U.S. 696, 706-708 (2005).

The United States Supreme Court determined that the District Court's instructions were improper because the jury was not required to find any type of "dishonesty" to render a guilty verdict; it was enough for the petitioner to have simply "impeded" the Government's factfinding ability. Andersen, 544 U.S. at 706-708. The Court also held that the instructions were infirm because they led the jury to believe that it did not have to find *any* nexus between the "persuasion" to destroy documents and any particular proceeding. Id. The Court determined, a "'knowingly... corrupt persuader' cannot be someone who persuades others to shred documents under a document retention policy when he does not have in contemplation any particular official proceeding in which those documents might be material." Id.

Professor Chris William Sanchirico, in commenting on Congress's intent in passing Sarbanes-Oxley's obstruction provision, stated that Congress's "apparent object... in passing" the act "was to combine § 1503(a)'s broader definition of obstructive acts with § 1512's weaker nexus requirement." Sanchirico, *Evidence Tampering*, 53 DUKE L.J. 1215, 1252-1253 (2004). Professor Sanchirico observed, "[u]nfortunately, Congress did not take the opportunity to clarify just how much more relaxed § 1512(c)'s nexus requirement is meant to be." Id. at 1254. Relative to Andersen, supra, Professor Sanchirico noted:

If Andersen had been destroying audit-related documents as it went along, rather than after it learned of the SEC inquiry in October 2001, would it have been criminally liable under new § 1512(c)? Arguably not. Although § 1512(c) does not require that the obstructed official proceeding be pending, it does seem to require that a particular official proceeding be looming on the horizon. *If Congress had wanted to criminalize the kind of upstream destruction that might have taken place under Andersen's retention policy, it could have done so with specific language.* Indeed, the courts' demonstrated tendency to interpret Chapter 73's ambiguities in favor of the accused would have indicated that specific statutory language was necessary to criminalize this kind of behavior.

Id. at 1256 (emphasis added). Absent such "specific statutory language... to criminalize this kind of behavior," fair reading of Aguilar, Andersen, Reich, Schwarz, and Quattrone demands that the Aguilar nexus be applied to §§ 1512 (c) (1) and 1519, in order to save these provisions from being unconstitutionally vague as applied to the conduct of attorneys in representation of their clients.

**B.**    **If The Court Determines That The "Nexus" Requirement Does Not Apply To §§ 1512(c)(1) and 1519, The Court Will Enable The Government To Criminalize Innocent Conduct Such As An Attorney's Duty To Zealously Advocate For His Client.**

Though the Government does not expressly state so in the Indictment, its decision to prosecute Mr. Russell pursuant to §§ 1512 and 1519, presents an unequivocal position: in order to avoid prosecution, Mr. Russell was required to breach the attorney-client privilege and compel his client to incriminate itself (specifically Church officials), by turning the computer/contraband over to law enforcement. If Mr. Russell had done so, law enforcement would have been able to trace the computer back to the Church since it had been used by a Church employee to perform Church related work. In doing so, Mr. Russell would have violated the attorney-client privilege by revealing confidential communications between himself and his client which led to his discovery of the computer. Turning the computer over to the authorities, therefore, was not an option; however, neither the Church nor Mr. Russell could retain possession of the computer because it was believed to be contraband.

If the Court allows the Government's artful but unconstitutional application of §§ 1512 and 1519 to Mr. Russell's conduct to stand, the result creates a new governmental tool compelling attorneys to report privileged communications with their clients to the Government, effectively

8

deputizing attorneys as agents of the Government. Consequently, in matters where potential for criminal liability exists, no attorney will be able to listen to the facts presented by a client without being faced with the Hobson's choice of violating the law or violating his professional code of ethics. See People v. Belge, 372 N.Y.S.2d 798, 799-800, aff'd., 41 N.Y. 2d 60 (1975). Such a result impedes the due administration of justice by placing potential criminal defendants at odds with their attorneys.

>    1.    **Application of §§ 1512(c)(1) and 1519 without the "nexus" requirement undermines the attorney's duty to abide by the Rules of Professional Conduct when representing a client.**

The purpose of the attorney-client privilege "is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "[I]f the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." Id. at 393. The privilege, however, belongs to the client, not the attorney, thus, only the client can waive it. See Model Rules of Professional Conduct, Rule 1.6 (2003).

If Mr. Russell had turned the computer over to the Government, he would have violated Rule 1.6 of the Rules of Professional Conduct because he learned about the computer through a confidential communication with his client. The language of Rule 1.6 is clear: "A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by subsection (b), (c), or (d)."

The exceptions enumerated in Rule 1.6 are inapplicable here. The first two exceptions pursuant to 1.6 (b), (c)(1) do not apply because there is no indication, based on the facts alleged in the Indictment, that Mr. Russell had to reveal the Church's possession of the computer in order to

prevent the Church from committing a crime or fraudulent act that Mr. Russell believed was likely to result in death, substantial bodily harm, or in the substantial injury to the financial interest or property of another. See Rule 1.6 (b), (c)(1), Connecticut Rules of Professional Conduct.

Moreover, pursuant to the third exception enumerated in 1.6 (c)(2), it was not necessary for Mr. Russell to reveal the contents of the confidential communication in order to "[p]revent, mitigate or rectify the consequence of a client's criminal or fraudulent act in the commission of which the lawyer's services had been used." This exception does not apply to Mr. Russell because he had not been retained when the Church took possession of the computer; according to the Indictment, he was retained a day later. If the Church's action of taking possession of the computer can be characterized as criminal or fraudulent, it appears not to have been counseled by Mr. Russell. See Commentary to Rule 1.6 (subsection (c)(2) does not apply when a lawyer is retained for representation concerning an offense *after* the client has committed the crime or fraud).

The final relevant exception to Rule 1.6, subsection (c)(4), enables an attorney to reveal confidential information without the client's informed consent, to the extent the lawyer reasonably believes necessary to "[c]omply with other law or a court order." See Rule 1.6(c)(4). No court order existed requiring Mr. Russell to reveal his confidential communication with the Church to law enforcement since no court proceeding had commenced and no subpoenas had been issued.

The question then becomes whether Mr. Russell should have viewed it as reasonably necessary to reveal his client's confidential communications regarding the computer in order to comply with the law. By his actions, it appears that Mr. Russell was concerned about complying with 18 U.S.C. § 2252A(a)(5)(B), which proscribes the knowing possession of child pornography. Thus, Mr. Russell apparently believed that neither he nor the Church could retain possession of the computer without violating § 2252(a)(5)(B). Destruction of the computer, therefore, would

have appeared to Mr. Russell to be the most appropriate action in order to stop the commission of a crime while preserving his client's confidences and fifth amendment rights.[3]

Should Mr. Russell have been aware that by destroying the computer to stop the commission of one offense (the knowing possession of child pornography), he was potentially committing another (obstruction of justice), and therefore disclosed the confidential communication with his client pursuant to Rule 1.6 (c)(4)? In a perfect world, perhaps; however, in reality, statutory ambiguity and the competing interests set forth in the various codes of professional conduct and statutes, force attorneys to make the most appropriate legal judgment they are able without sacrificing their client's legal interests. Certainly, such judgments undertaken with the intent to represent a client as zealously as possible while abiding by professional norms, should not be criminalized.

### 2. Application of §§ 1512(c)(1) and 1519 without the "nexus" requirement undermines the attorney's duty to protect her client's fifth amendment right against self-incrimination.

"Citizens facing criminal charges must be able to obtain legal counsel free of the fear that their confidential communications will be used as evidence against them. The right not to be compelled in any criminal case to be a witness against himself would be empty if defense counsel, repeating information provided by a client, acted as a witness against him..." Stenhach, 514 A.2d at 117-118 (damage to the administration of justice occurs when "the sanctity of the confidence is improvidently violated"). An attorney may not violate his or her client's fifth amendment rights by waiving them for the client, only the client has the power to waive those rights. See Belge, 372 N.Y.S. 2d at 802 (an individual's "self-incrimination rights become completely nugatory if compulsory disclosure can be exacted through his attorney"). If Mr. Russell had turned the computer over to the authorities, he would have waived his client's fifth amendment rights;

---

[3] Indeed, § 18 USC § 2252A(d)(1)(2) *legalizes* the destruction of child pornography in certain instances and creates an affirmative defense to § 2252(a)(5)(B).

consequently, Mr. Russell was constitutionally prohibited from turning the computer over to law enforcement.

In this case, Mr. Russell was acting within the scope of his profession, protecting his client's fifth amendment rights. By its very nature, the fifth amendment protection against self incrimination is an obstructive measure. See 43 AM. BUS. L.J. at 38. It protects not only statements that could be directly incriminating, but also testimony that would furnish a link in a chain of evidence needed to prosecute the crime. Id. For example, a lawyer's motion to suppress evidence or his advice to the client to assert the fifth amendment privilege would appear to be calculated to deprive the fact-finder of relevant, inculpatory evidence.

Application of §§ 1512 and 1519 to conduct such as Mr. Russell's threatens the role of counsel, not only in the adversarial system, but as advisor and advocate prior to the initiation of a criminal investigation. Every person who is a subject or target of an investigation is entitled to zealous representation and it is through that representation that truth and justice emerge, see Penson v. Ohio, 488 U.S. 75, 84 (1988). If, however, the Government is allowed to apply §§ 1512 and 1519 to attorney conduct such as Mr. Russell's, efforts undertaken as part of zealous representation could theoretically expose attorneys to potential prosecution. Such efforts include the following conduct:

1. Advising a client to invoke her fifth amendment right to withhold her testimony – which could be directly incriminating or lead to the discovery of incriminating evidence from a tribunal.

2. Asserting a client's fourth amendment rights to withhold documents and records from an investigation if police were to attempt to search a home without a search warrant.

3. Asserting a client's fourth and fifth amendment rights by filing motions to suppress statements made by the client or to suppress evidence seized by police in a criminal case.

4. Moving to quash a subpoena that seeks information potentially incriminating to his or her client.

5. Advising a client not to produce a class of documents, or a specific document,

that have not been described or identified in a subpoena, even though the attorney recognizes that the documents or document contain information that the investigator would want to see.

6. Advising a client to amend a statement to regulators, memos and press releases to remove content that is unnecessary or to make it more accurate.

7. Attempting to persuade government officials to cease investigating a client.

In each of these instances, the attorney would be advising the client or assisting the client in taking action that the client has every legal right to take and that would be in the client's interest. The client is entitled to receive unfettered advice to exercise these rights and to have the attorney advocate his position, and our system of justice demands it. Yet, by the Government's application of §§ 1512 and 1519 to the conduct at bar, each of these examples would be illegal. Such an interpretation would radically shift the balance in the adversarial system to the detriment of both the individual and our system of justice.

### C. The "Safe Harbor" Provision Of 18 U.S.C. § 1515(c) Does Not Save §§ 1512 and 1519 From Being Unconstitutionally Vague As They Are Applied To An Attorney's Conduct In Representation Of A Client.

Title 18 U.S.C. § 1515(c) provides: "This chapter does not prohibit or punish the providing of lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding." 18 U.S.C. § 1515(c). It thus excepts from prosecution under § 1512(c)(1) and 1519 "the providing of lawful, bona fide, legal representation services." For several reasons, however, the "safe harbor" provision does not allay concerns that the government's application of §§ 1512 and 1519 to conduct such as Mr. Russell's is an attempt by the Government to criminalize advice and conduct by attorneys acting as zealous advocates.

First, § 1515(c) itself is plagued with sufficient ambiguity that any attorney who acts on behalf of a client to withhold evidence or testimony, or advises the client to withhold evidence or testimony does so at her own peril. For example, there is no definition of "lawful" and that term is itself circular. If a lawyer's zealous advocacy of her client may now constitute unlawful activity prohibited by §§ 1512(c) and 1519, then § 1515(c)'s carve-out for "lawful, bona fide, legal representation" would provide no comfort at all. See Charles W. Wolfram, *Lawyer Crimes:*

*Beyond the Law?* 36 VAL. U. L. REV. 73, 115 (2001) ("The argument is considerably circular--being based in large part on the requirement that the legal representation be 'lawful'...").

Likewise, the term "bona fide" is not self-defining. It could refer to the relationship between the attorney and the individual withholding testimony or evidence; it could refer to the content of the advice and whether it was "bona fide" in the mind of the reviewing court; or it could have some other meaning. An attorney trying to understand her risks in providing representation of a client could only speculate.[4]

Attorneys cannot even be sure what activities will be considered "legal representation services" under § 1515(c), since attorneys represent their clients' interests in a variety of non-traditional forums. See Gentile v. State Bar of Nev., 501 U.S. 1030, 1043 (1991) ("An attorney's duties do not begin inside the courtroom door.") (Kennedy, J., plurality); In re Grand Jury Subpoenas Dated March 24, 2003, 265 F. Supp. 2d 321, 326-27 (S.D.N.Y. 2003) ("More recently... there has been a strong tendency to view the lawyer's role more broadly."). Attorneys are increasingly being hired for both their legal and non-legal skills. For example, an attorney may work with the press or a public relations firm. See Gentile, 501 U.S. at 1058 ("...in some circumstances press comment is necessary to protect the rights of the client and prevent abuse of the courts"). In doing so, she may make a statement the government alleges was intended to keep witnesses from stepping forward. Arguably, the statement to the press may not be part of the attorney's "legal" role and the safe harbor would not apply. See, e.g., In re Grand Jury Subpoenas, 265 F. Supp. 2d at 324-32 (considering whether communication with a public relations firm hired by an attorney on behalf of a criminal defendant is protected by attorney-client privilege). Similarly, a corporate general counsel often makes decisions (e.g., implementing a document retention policy) and takes actions (e.g., serving as Secretary at board meetings) that

---

[4] Very few courts have mentioned or interpreted § 1515(c), and many open questions remain as to the definition of "lawful, bona fide, legal representation." See United States v. Kloess, 251 F.3d 941, 944-49 (11th Cir. 2001); United States v. Kellington, 217 F.3d 1084, 1098 (9th Cir. 2000).

have multiple legal and business purposes. In each of these circumstances, there is a question whether the conduct of the attorney is "legal representation." Attorneys also are routinely involved in advocating their clients' interests before Congress or in lobbying government agencies. Again, it is unclear whether this constitutes "legal representation."

Finally, even if some of these terms might be given definition in a particular factual setting, application of §§ 1512 and 1519 to attorney conduct would still chill zealous advocacy. By the Government's application of §§ 1512 and 1519 to Mr. Russell's conduct, an attorney who refused to incriminate his client and break attorney-client confidentiality, has committed a crime regardless of whether the safe harbor provision applies. The safe harbor could be interpreted to be an affirmative defense. See United States v. Kloess, 251 F.3d 941, 948 (11th Cir. 2001). If so, an attorney prosecuted for obstruction would bear the burden of pleading the defense as well as the burden of defending himself in court. See Id. So interpreted, the statutory scheme would result in an ever-present threat of prosecution and a potential tool of harassment. See, e.g., United States v. Van Engel, 15 F.3d 623, 629 (7th Cir. 1993), cert. denied, 511 U.S. 1142 (1994).

## IV. Conclusion

It is elementary that a lawyer's representation of her client must be unfettered, see Herring v. New York, 422 U.S. 853, 857 (1975), and that "a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing 'the undivided interests of her client.'" Polk County v. Dodson, 454 U.S. 312, 318-319 (1981). To ensure that attorneys are acting in their client's interests, counsel must be independent of outside influences, as the attorney is the only person charged with advancing the client's interests in the adversarial process. See Wheat v. United States, 486 U.S. 153, 154-157, rehrg. denied, 482 U.S. 1243 (1988); Cuyler v. Sullivan, 446 U.S. 335, 346 (1980). Enabling the Government to apply §§ 1512(c)(1) and 1519 to conduct such as Mr. Russell's without requiring the Government to allege and prove the Aguilar "nexus," will force attorneys to choose between their duty of zealous representation and avoiding prosecution. Thus, these overly vague provisions become a dangerous tool that prosecutors may use indiscriminately and in violation of the Constitution.

Respectfully submitted,

CONNECTICUT CRIMINAL DEFENSE LAWYERS
ASSOCIATION AS AMICUS CURIAE

By: _____

Moira L. Buckley
Shipman and Goodwin, LLP
One Constitution Plaza
Hartford, CT 06103
Tel. (860) 251-5836
Facsimile (860) 251-5319
Federal Bar No. 18803

## CERTIFICATION

I hereby certify that copies of the foregoing were hand delivered on this 2nd day of July, 2007 to the following counsel representing the Government and the defendant:

**For the Government:**
James K. Filan, Jr.
U.S. Attorney's Office
915 Lafayette Blvd. Room 309
Bridgeport, CT 06604
203-696-3000
Fax: 203-579-5575
Email: james.filan@usdoj.gov

John H. Durham
Peter S. Jongbloed
U.S. Attorney's Office
157 Church St., 23rd floor
New Haven, CT 06510
203-821-3746
Fax: 203-773-5378
Email: John.durham@usdoj.gov;
Peter.Jongbloed@usdoj.gov

**For the Defendant:**
Robert M. Casale
250 W. Main St.
Branford, CT 06405
203-488-6363
Fax: 203-483-9850
Email: AttorneyCasale@aol.com

Thomas J. Williams
399 E. Putnam Ave.
Cos Cob, CT 06807
203-661-7404
Fax: 203-622-6718
Email: tjwmslaw@aol.com

Moira L. Buckley