UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA        :

     v.                          :        3:07CR31(AHN)

PHILIP D. RUSSELL               :

<u>RULING ON MOTIONS TO DISMISS INDICTMENT</u>

     The indictment in this obstruction of justice case alleges that the defendant, Philip D. Russell ("Russell"), an attorney who specializes in civil and criminal litigation in state and federal courts, violated two obstruction of justice statutes by destroying a laptop computer ("Computer") containing photographs of naked boys and information about the sexual exploitation of children.  The Computer belonged to Robert Tate ("Tate"), the choirmaster and organist employed by Russell's client, a Greenwich, Connecticut church ("Church").

     Russell has moved to dismiss the indictment.  He asserts that neither count one, which charges a violation of 18 U.S.C. § 1512(c)(1) (the evidence tampering statute), nor count two, which charges a violation of 18 U.S.C. § 1519 (the anti-shredding provision of the Sarbanes-Oxley Act), sufficiently allege the required nexus between his obstructive conduct and any federal proceeding or investigation that was reasonably foreseeable to him.  In other words, he argues that he cannot be prosecuted for obstructing a hypothetical future federal proceeding that he did

not, and could not have known about.  He also asserts that § 1519 was not enacted to criminalize the destruction of contraband and that the statute's failure to include a mens rea requirement or define its unique "in relation to or contemplation of" language renders it void for vagueness.  For the following reasons, the motions [docs. ## 13 & 15] are DENIED.

<u>STANDARD</u>

Under the Fifth Amendment, an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial on the charges.  <u>Costello v. United States</u>, 350 U.S. 359, 363 (1956).  Pursuant to Fed. R. Crim. P. 7(c), an indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged."  <u>Id.</u>  An indictment is legally sufficient if it does little more than track the statutory language of the statute charged, state the approximate time and place of the alleged crime, and contain some amount of factual particularity to ensure that the prosecution will not fill in the elements of its case with facts other than those considered by the grand jury.  <u>E.g.</u>, <u>United States v. Walsh</u>, 194 F.3d 37, 44 (2d Cir. 1999).  As the Supreme Court recently reiterated, "an indictment has two constitutional requirements: first, [it must] contain the elements of the offense charged and fairly inform a defendant of the charge against which he must defend, and second, [it must]

enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Resendiz-Ponce, 127 S. Ct. 782, 788 (2007) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).  However, as the Resendiz-Ponce Court observed, "while an indictment parroting the language of a federal criminal statute is often sufficient, there are crimes that must be charged with greater specificity[,]" such as when the definition of an offense includes generic terms.  Id. at 789 (citing United States v. Russell, 369 U.S. 749, 765 (1962)) ("It is an elementary principal of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as the definition; but it must state the specifics, -- it must descend to particulars.").

In determining whether an indictment is sufficient, the court must read it in its entirety and include facts that are necessarily implied by the specific allegations.  E.g., United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002); United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992).  The validity of an indictment is tested by its allegations, not by whether the government can prove its case.  Costello v. United States, 350 U.S. at 363.  Thus, a technically sufficient indictment "is not subject to dismissal on the basis of factual

questions, the resolution of which must await trial." <u>United States v. Alfonso</u>, 143 F.3d 772, 776-77 (2d Cir. 1998) (holding that the district court erred in dismissing the indictment based on sufficiency of evidence); <u>see also</u> <u>United States v. Paccione</u>, 738 F. Supp. 691, 696 (S.D.N.Y. 1990).  "It is axiomatic that, in a criminal case, a defendant may not challenge a facially valid indictment prior to trial for insufficient evidence.  Instead, a defendant must await a Rule 29 proceeding or the jury's verdict before he may argue evidentiary sufficiency." <u>United States v. Gambino</u>, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992), <u>aff'd</u>, 17 F.3d 572 (2d Cir. 1994).

For these reasons, when considering a motion to dismiss an indictment, the court must not conflate permissible claims based on the sufficiency of the government's allegations with impermissible claims based on the sufficiency of the government's evidence.  <u>United States v. Elson</u>, 968 F. Supp. 900, 905 (S.D.N.Y. 1997).  "[I]t would run counter to the whole history of the grand jury institution to permit an indictment to be challenged 'on the grounds that there was inadequate or incompetent evidence before the grand jury.'" <u>United States v. Williams</u>, 504 U.S. 36, 55 (1992) (<u>quoting</u> <u>Costello v. United States</u>, 350 U.S. 359 (1956)).

It would be proper, however, to dismiss an indictment that fails to state an offense under the charged statute.  <u>See</u> <u>United</u>

States v. Panarella, 277 F.3d 678, 684-85 (3d Cir. 2002) (noting that an indictment fails to state an offence if the specific facts alleged fall beyond the scope of the charged statute as a matter of statutory interpretation).

THE INDICTMENT

The indictment in this case contains the following allegations:  The Church had employed Tate as its choirmaster and organist for 24 years.  For many years, Tate knowingly possessed and stored on his Computer and other storage media child pornography, including photographs and information about sexual exploitation of children.  On October 6, 2006, the FBI began a criminal investigation of Tate regarding his long-term possession of child pornography and exploitation of children.

On October 7, 2006, a Church employee, who was using Tate's Computer on Church-related work, discovered a substantial number of images of, inter alia, naked boys.  On October 8, 2006, Church officials sealed and wrapped Tate's Computer, treating it as evidence.  On that same day, Russell, an attorney who specialized in civil and criminal litigation in state and federal courts, began representing the Church with respect to its employment of Tate, given that Tate's Computer contained images of naked boys.

On October 9, 2006, Russell and two Church officials met with Tate and confronted him about the images on his Computer. Tate acknowledged that the images were his and resigned from the

Church.  Russell gave Tate the name of a criminal defense attorney who was available to represent Tate.  Later that day, Tate contacted that criminal defense attorney.  Russell and the Church officials also made arrangements for Tate to leave Connecticut and travel to California.  They permitted Tate to pack a bag so as to leave Church property, at which time Tate removed from his apartment on Church property various items, including his child pornography collection.  Tate ultimately discarded most of that collection.  Russell took possession of Tate's Computer and took it apart.

In count one, the indictment charges that Russell, after learning that Tate's Computer contained images of naked boys, took possession of it and corruptly altered, destroyed, mutilated, and concealed it and attempted to do so by taking it apart with the intent to impair its integrity and availability for use in an official proceeding and thereby making it unavailable for an official proceeding before a judge, court, magistrate judge, and grand jury, in violation of 18 U.S.C. § 1512(c)(1).

In count two, the indictment alleges that, in violation of 18 U.S.C. § 1519, Russell unlawfully, willfully, and knowingly altered, destroyed, mutilated, concealed, and covered up a record, document, and tangible object with the intent to impede, obstruct, and influence the investigation and proper

administration of any matter within the jurisdiction of any department and agency of the United States, which was the FBI's investigation of Tate's possession of child pornography and exploitation of children.  It further alleges that Russell, in relation to and in contemplation of any such matter and case, after learning that Tate's Computer contained images of naked boys, altered, destroyed, mutilated, concealed, and covered it up by taking it apart and impairing its integrity thereby making it unavailable to the FBI in its investigation of Tate.

### THE STATUTES

The statute charged in count one, 18 U.S.C. § 1512(c)(1), makes it a crime for a person to corruptly alter, destroy, mutilate, or conceal a record, document, or other object, or attempt to do so, with the intent to impair the object's integrity or availability for use in an official proceeding. Another section of this statute, § 1512(f)(1), provides that an official proceeding need not be pending or about to be instituted at the time of the offense.

The statute charged in count two, 18 U.S.C. § 1519, imposes criminal liability on a person who knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any

department or agency of the United States "or in relation to or
contemplation of any such matter or case[.]"

<u>DISCUSSION</u>

Russell asserts that both count one and count two are
deficient and must be dismissed because they do not allege any
nexus between his obstructive conduct and any federal proceeding
or investigation that was reasonably foreseeable to him.  He also
claims that the indictment fails to properly allege intent.
Russell further maintains that count two must be dismissed
because § 1519 was only intended to criminalize the destruction
of corporate records and documents, not contraband such as child
pornography, and that § 1519 may be void for vagueness.

I.   <u>The Nexus Requirement</u>

     The Supreme Court has read a nexus requirement into two
other obstruction of justice statutes, 18 U.S.C. § 1503 and 18
U.S.C. § 1512(b)(2).  Specifically, in <u>United States v. Aguilar</u>,
515 U.S. 593 (1995), the Supreme Court held that under § 1503,
the government must not only prove that a defendant knew of a
pending judicial or grand jury proceeding and intended to
obstruct it, it must also prove a nexus linking the defendant's
obstructive conduct and a judicial proceeding -- "that the act
[has] a relationship in time, causation, or logic with the
judicial proceeding" so that it may be said to have the "natural
and probable effect" of interfering with the due administration

-8-

of justice." Id. at 599 (reversing a conviction where the defendant knew that a grand jury investigation was pending and was aware of the possibility that his false statements to FBI agents might be put before it, but there was no evidence that the defendant knew the agents were going to testify before the grand jury and convey his falsehoods).

After Aguilar, the Supreme Court decided Arthur Anderson LLP v. United States, 544 U.S. 696 (2005), the Enron-related document destruction case alleging a violation of § 1512(b)(2).  In Arthur Anderson, the Court applied the nexus requirement to prosecutions under § 1512(b)(2) and further noted that although § 1512(f)(1) did not require an official proceeding to be pending or about to be instituted at the time of the offense, this did not mean that a proceeding need not even be foreseen.  Id. at 707.  As the Court reasoned, someone who persuades others to shred documents under a document retention policy when he does not have in contemplation any particular official proceeding in which those documents might be material cannot be a "knowingly ... corrup[t] persaude[r]."  Thus, under Arthur Anderson, an official proceeding must be foreseeable at the time of the obstructive act before a person can be liable for obstruction of justice under § 1512(b).  Id. at 707-08.

Based on Aguilar and Arthur Anderson, the Second Circuit recently held in United States v. Reich, 479 F.3d 179 (2d Cir.

2007), that the nexus requirement applied to prosecutions under 18 U.S.C. § 1512(c)(2), which subjects to criminal liability one who "corruptly ... obstructs, influences, or impedes any official proceeding."  The Second Circuit construed this nexus as requiring the government to prove that the defendant's conduct had a relationship in time, causation, or logic with judicial proceedings.  In other words, "the endeavor must have the natural and probable effect of interfering with the due administration of justice."  <u>Id.</u> at 185-86.  In so holding, the <u>Reich</u> court noted that it had previously applied <u>Aquilar</u>'s nexus requirement to two other obstruction statutes, i.e., to § 1503, in <u>United States v. Schwarz</u>, 283 F.3d 76, 109 (2d Cir. 2002) (reversing a conviction for conspiracy to violate the omnibus clause of § 1503 because there was no showing that the defendant knew the false statements he made to federal investigators would be conveyed to the grand jury and thus the defendant lacked the requisite intent to obstruct justice), and to § 1505, in <u>United States v. Quattrone</u>, 441 F.3d 153, 174 (2d Cir. 2006) (holding that <u>Arthur Anderson</u> requires that there be "some nexus between the effort to tamper ... pertaining to the relevant proceeding and awareness that such conduct was likely to affect the proceeding").  <u>Id.</u> at 186.

Shortly after <u>Reich</u>, the Second Circuit, in a summary order in <u>United States v. Ortiz</u>, No. 05-2837, 2007 WL 841616 (2d Cir.

Mar. 20, 2007), acknowledged that it had recently held that the
Aguilar nexus requirement applied to § 1512(c)(2), and assumed
without deciding that the nexus requirement also applies to §
1512(c)(1), the statute charged in count one of the indictment in
this case, and thus there must be evidence that the defendant's
conduct had a nexus, that is, a relationship in time, causation,
or logic with the judicial proceeding.  Id.

        According to this precedent, there appears to be little
doubt that the nexus requirement applies to prosecutions under
both obstruction of justice statutes at issue in this case.
Indeed, the government, while not conceding the point, does not
contest it for the purpose of these motions to dismiss.  But this
does not mean that the indictment must be dismissed because it
does not allege this nexus with the specificity demanded by
Russell.  To the contrary, the indictment contains sufficient
factual detail linking Russell's obstructive conduct and an
official proceeding or investigation.  That is, it sufficiently
alleges a relationship in time, causation, or logic so that
Russell's conduct may be said to have the natural and probable
effect of interfering with the alleged judicial proceeding and
investigation, see Aguilar, 515 U.S. at 599-600, 601, and thereby
satisfies the pleading requirements of the Sixth Amendment and

Fed. R. Crim. P. 7(c)(1).[1]  See United States v. Resendiz-Ponce,
127 S. Ct. at 789 (noting that while detailed allegations might
have been required under common-law pleading rules, they "surely
are not contemplated by Rule 7(c)(1), which provides that an
indictment shall be a plain, concise, and definite written
statement of the essential facts constituting the offense
charged").[2]

      A.  Sufficiency of the Nexus Allegations

      With regard to count one, Russell maintains that, while the
government need not show that an official proceeding is pending,
it nonetheless must allege and prove that, at the time he
destroyed Tate's Computer, he intended to obstruct a specific and
identifiable official proceeding.  He contends that such a
showing is virtually impossible because when he destroyed Tate's
Computer he had no reason to believe that any official proceeding
was either in progress or would ever be instituted into Tate's
criminal activities.  With regard to count two, Russell asserts

_____

      [1]To satisfy the Sixth Amendment, an indictment need only
inform the defendant of the offense charged with sufficient
clarity so that he will not be misled while preparing his
defense.  United States v. Alfonso, 143 F.3d 772, 776 (2d Cir.
1998).  Rule 7(c)(1) implements this notice requirement.  United
States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999).

      [2]This conclusion should allay the concerns of the amicus
curiae that unless a nexus requirement is read into both
statutes, attorneys will not be able to decipher the line between
conduct that is lawfully undertaken to zealously represent
clients and conduct that is undertaken for unlawful purposes.

that the indictment is similarly deficient because it does not allege a nexus between his conduct and a federal investigation that was reasonably foreseeable to him.

According to Russell, the indictment does not charge an offense under either § 1512(c)(1) or § 1519 because it does not specifically allege that his obstructive conduct bears a relationship in time, causation, and logic to an actual, not merely a possible, official proceeding or investigation.  He maintains that he can be prosecuted under these obstruction statutes only if the indictment alleges that such a proceeding or investigation was foreseeable to him, i.e., that he had knowledge that Tate was the subject of a federal criminal investigation or that an official proceeding was contemplated.  Russell asserts that without such knowledge, he could only have known that Tate might have committed a crime which the authorities might or might not ever detect, and thus he could not have obstructed any official proceeding or investigation by destroying evidence of that crime.  Thus, Russell says, because the indictment does not contain any facts establishing that an official proceeding or investigation was foreseeable to him and that he acted to obstruct that proceeding, the charges must be dismissed.

Not only does Russell misread the factual allegations in the indictment, his argument as to what must be pleaded in an indictment charging obstruction of justice under both

§ 1512(c)(1) and § 1519 is wrong in that it conflates permissible claims based on sufficiency of the government's allegations with impermissible claims based on the sufficiency of the government's evidence.  <u>See</u> <u>United States v. Triumph Capital Group, Inc.</u>, 260 F. Supp. 2d 470, 473 (D. Conn. 2003).  Indeed, neither <u>Aguilar</u>, nor <u>Arthur Anderson</u>, nor <u>Schwarz</u>, nor <u>Quattrone</u>, nor <u>Reich</u>, nor <u>Ortiz</u> held that the nexus requirement is an element of an obstruction of justice statute that must be specifically alleged in the indictment.  The issue in each of those cases was not the sufficiency of the indictment, but whether a nexus between the obstructive conduct and the official proceedings was an element of the statute at issue.  Essentially, Russell's motion impermissibly asks the court to dismiss the indictment on a factual determination that the government cannot prove a nexus between his obstructive act and an official proceeding or investigation.  But it is the jury, not the court, that must determine whether, at the time he destroyed Tate's Computer, an official proceeding as alleged in count one, or the FBI investigation as alleged in count two, were foreseeable to or anticipated by Russell.  <u>See, e.g.</u>, <u>Costello v. United States</u>, 350 U.S. 359, 363 (2d Cir. 1956).

Further, the court finds no merit to Russell's argument that indictments charging obstruction of justice must contain specific factual detail supporting the nexus requirement because the

nexus goes to the core of criminality.  The statutes at issue here are far different from the one at issue in Russell v. United States, 369 U.S. 749 (1962), on which Russell relies.  In Russell, the indictment charged a violation of 2 U.S.C. § 192, which made it a crime to refuse to answer questions that were pertinent to the subject under Congressional investigation. Because the indictment did not identify the subject under inquiry, but only alleged that the questions were "pertinent to the subject under inquiry," the Court found it was defective. The Court reasoned that, because the core of criminality under the statute is the pertinency of the questions to the subject under inquiry, and because guilt depended so crucially on the specific identification of what that subject was, the indictment had to do more than simply repeat the statutory language, it had to descend to particulars.  Id. at 764.

However, unlike the subject under inquiry in the statute at issue in Russell, the nexus requirement of the obstruction of justice statutes at issue here does not go to the core of criminality.  Cf. United States v. Bernstein, 533 F.2d 775 (2d Cir. 1976) (holding that where the crime charged is knowingly making false statements, the core of criminality is not the substance of the statements, but that knowing falsehoods were made and thus Russell does not require specific allegations identifying the substance of what was concealed); United States

v. Paulino, 935 F.2d 739, 750 n.4 (6th Cir. 1991) (collecting cases).

Moreover, the term "nexus," like the terms "obscenity" in the statute criminalizing the mailing of obscene material, "overt act" in the illegal reentry statute, and "quid pro quo" in the federal extortion statute, is not a generic or descriptive term that must be alleged with the factual specificity required by Russell. See United States v. Resendiz-Ponce, 127 S. Ct. at 788 (holding that the reasoning of Russell suggested there was no infirmity where an indictment alleging attempted reentry did not specifically allege the overt act element of 8 U.S.C. § 1326(a) because the term "attempt" in common parlance connotes action and has been used in the law for centuries to encompass both an overt act and intent); Hamling v. United States, 418 U.S. 89, 117 (1974) (distinguishing Russell on the grounds that "obscenity" was not a generic term that was required to be specifically pleaded in an indictment alleging a violation of 18 U.S.C. § 1461); United States v. Alipheti, 867 F. Supp. 142, 145 (E.D.N.Y. 1994) (holding that "quid pro quo" was not a generic element of 18 U.S.C. § 1951 that had to be specifically alleged); cf. United States v. Klein, 476 F.3d 111, 113 (2d Cir. 2007) (holding that an indictment charging bank fraud was not defective for failing to allege that the fraud was material because materiality can be inferred from the well-settled legal meaning of fraud).

-16-

Rather, the terms nexus, overt act, obscenity, and quid pro quo are terms of art whose legal meanings do not change from indictment to indictment and are sufficiently definite to give defendants notice of the charges against them.  See Hamling, 418 U.S. at 117.  As such, they do not need "to be alleged in the indictment in order to establish its sufficiency[.]"  Id.

For these reasons, and contrary to Russell's arguments, the indictment contains sufficient factual particularity showing a relationship in time, causation, and logic between Russell's destruction of Tate's Computer and a grand jury proceeding or a FBI investigation to put him on notice of the charges against him.  And that is all that is required.  See id.

Specifically, that factual detail includes allegations that (1) a Church employee discovered images of naked boys on Tate's Computer; (2) the Church, prior to retaining Russell, sealed and wrapped Tate's Computer, treating it as evidence; (3) Tate was being investigated by the FBI for possession of child pornography and exploitation of children prior to Russell's involvement as attorney for the Church; (4) Russell specialized in criminal law; (5) Russell knew Tate's Computer contained images of naked boys; (6) Russell was retained by the Church to represent the Church and not Tate "given that Tate's laptop computer contained images of naked boys;" and (7) prior to destroying Tate's Computer, Russell gave Tate the name of a criminal defense attorney and

-17-

Tate contacted that criminal defense attorney later that same day.

These allegations sufficiently allege a nexus between Russell's conduct and an official proceeding or investigation. Whether the government's evidence will be sufficient to prove that nexus must await trial. See United States v. Alfonso, 143 F.3d at 777.

B.   Sufficiency of the Intent Allegations

Russell's claim as to the sufficiency of the indictment's allegation of intent also fails.  The indictment alleges that Russell acted with the requisite intent, and that is sufficient under the pleading requirements of Rule 7(c)(1), which does not require intent to be alleged with specificity.  See id.  Rather, whether Russell had the intent to obstruct justice is another factual question whose resolution must await trial, see id. at 776-77, at which time the government will have to produce evidence of conduct "that, in [the defendant's] mind, had the 'natural and probable effect' of obstructing or interfering with [an official proceeding or a FBI investigation]." See United States v. Schwarz, 283 F.3d at 109 (citing Aguilar, 515 U.S. at 599).

In sum, there is no merit to Russell's arguments, which essentially ask the court to make a factual determination that the government cannot prove either a nexus or intent.  It is well

settled that such factual determinations are for a jury, not the court, to decide after hearing the government's proof and being instructed on the law.

II.   The Reach of § 1519

Russell suggests that the proper construction and legislative history of § 1519 indicates that it was crafted to proscribe document destruction undertaken to frustrate the government's investigation of corporate fraud and does not support its application in cases such as this involving the destruction of a computer containing contraband.  Russell's reading of the statute's legislative history is wrong.  Nothing in the legislative history supports a conclusion that the drafters intended to narrowly circumscribe its application to the destruction of business records and documents.

Although one of law's drafters indicated that it was designed to respond to the Enron-related shredding of audit documents which was beyond the reach of existing obstruction of justice statutes, see 148 Cong. Rec. S1785-86 (daily ed. March 12, 2002) (statement of Sen. Leahy), this comment cannot be read as implying that the statute was enacted solely to prevent the destruction of corporate financial records to the exclusion of other destructive acts that are intended to interfere with or thwart other types of federal investigations.  To the contrary, the legislative history expressly indicates that it was designed

to be used in "a wide array of cases."  148 Cong. Rec. S7,418
(daily ed. July 26, 2002) (explaining that § 1519 "could be
effectively used in a wide array of cases where a person destroys
or creates evidence with the intent to obstruct an investigation
or matter that is, as a factual matter, within the jurisdiction
of any federal agency or bankruptcy ... [and] it also covers acts
either in contemplation of or in relation to such matters")
(statement of Senator Leahy).

　　　Indeed, as another court said in construing the statute's
legislative history, it was apparent that § 1519 was designed "to
apply broadly to any acts to destroy or fabricate physical
evidence so long as they were done with the intent to obstruct,
impede or influence the investigation ... of any matter ... [or]
in relation to or contemplation of such a matter or
investigation."  United States v. Kun Yun Jho, 465 F. Supp. 2d
618, 635-36 (E.D. Tex. 2006).  The Jho court further noted that
§ 1519 was specifically meant to eliminate any technical
requirement, which some courts had read into other obstruction
statutes, that the obstructive conduct be tied to a pending or
imminent proceeding, as well as to eliminate the distinction
between court proceedings, investigations, regulatory or
administrative proceedings, and less formal government inquiries.
Id.  In sum, the intent of the statute is simple: "people should
not be destroying, altering or falsifying documents to obstruct

any government function." Id.

Nonetheless, as the government points out, even if § 1519 was passed to penalize document destruction in the context of corporate financial fraud, this would not prevent the government from using it to prosecute the destruction of evidence in connection with the investigation of other crimes.[3] Cf. United States v. Wortman, 488 F.3d 752 (7th Cir. 2007) (upholding the conviction under § 1519 of a woman who destroyed a CD that contained evidence relating to a federal investigation of child pornography); United States v. Smyth, 213 Fed. Appx. 102 (3d Cir. 2007) (involving an individual who pleaded guilty to violating § 1519 by destroying a computer hard drive with intent to obstruct a federal investigation of child pornography); United States v. Jackson, 186 Fed. Appx. 736 (9th Cir 2006) (affirming conviction of a Federal Protection Service investigator under § 1519 for falsifying records in connection with a criminal investigation); United States v. Lessner, No. 06-1030, 2007 WL 2257630 (3d Cir. Aug. 8, 2007) (upholding a conviction under § 1519 where the

---

[3]Indeed, RICO was originally enacted to prosecute organized crime, but that has not prevented the government from using it in other contexts, including cases involving corporate fraud and drug trafficking conspiracies. United States v. Turkette, 452 U.S. 576, 584 (1981) (noting that while the declared purpose of RICO was to seek the eradication of organized crime, that did not mean it was only applicable to the efforts of organized crime to infiltrate legitimate businesses, but to any association of individuals that pursues criminal purposes). It has also not prevented private parties from using it in civil litigation.

defendant destroyed records in connection with an investigation of defense procurement fraud); United States v. Mermelstein, 487 F. Supp. 2d 242 (E.D.N.Y. 2007) (involving the prosecution of a doctor under § 1519 for falsifying patient treatment records in connection with a FBI and HHS investigation of Medicare fraud).

Likewise, there is no merit to Russell's statutory construction argument that the "tangible object" language in § 1519 cannot be read as an independent term, but can only be reasonably understood as referring storage media that contain records and documents, such as CDs and floppy discs.  Not only is this construction belied by the ordinary and common meaning of the term "tangible object," see Smith v. United States, 508 U.S. 223, 228 (1993) (noting that words not defined in a statute should be given their ordinary meaning), Russell's construction effectively renders the term "tangible object" superfluous and meaningless.  Such a construction is not permissible and would violate the well-settled presumption against construing a statute in a way that renders one of its terms ineffective.  United States v. Blasius, 397 F.2d 203, 207 n.9 (2d Cir. 1968).  Indeed, if Congress had intended the construction Russell urges, it could have used such limiting language.  It did not, and this court is not willing to interpret it in such a restrictive way.  See Smith v. United States, 508 U.S. at 229.

In short, the term "tangible object" is not ambiguous and

there is no reason to construe it as meaning anything other than "tangible object."  Cf. United States v. Turkette, 452 U.S. 576, 581, 588 n.10 (1981) (noting that where a statutory term is unambiguous it must be regarded as conclusive and neither the rule of ejusdem generis nor the rule of lenity are applicable).

In addition, Russell's contention that applying § 1519 to the destruction of contraband does not give fair notice to innocent possessors that "it is more illegal for them to destroy it than to possess it," ignores the fact that § 1519 does not merely criminalize the destruction of contraband.  The statute criminalizes the knowing destruction of a record, document, or tangible object, even one containing contraband, but only if the destruction is undertaken knowingly and with the intent to obstruct a federal investigation or the proper administration of any matter or "in relation to or contemplation of" such matter or case.  18 U.S.C. § 1519.  Moreover, because of the nexus requirement, if an innocent possessor of contraband consisting of or contained in a record, document, or tangible object (such as a computer), destroys the record, document, or object, he would not be subject to prosecution under § 1519 unless there was a relationship in time, causation, or logic between the destruction and an official investigation, or in relation to or contemplation of an official investigation, i.e., where an official investigation was foreseeable or anticipated so that it could be

-23-

said that the destructive act had the "natural and probable effect" of obstructing the due administration of justice.

For these reason, Russell's statutory construction and intent arguments are unavailing.

III. <u>Void For Vagueness</u>

According to Russell, § 1519 may be void for vagueness because the language "in relation to or contemplation of" does not give a person of ordinary intelligence fair notice of what conduct is prohibited and does not provide explicit standards to discourage arbitrary and discriminatory enforcement.  The court disagrees.

Where, as here, First Amendment rights are not implicated, a statute is assessed for vagueness only as applied, i.e., in light of the specific facts of the case and not with regard to the statute's facial validity.  <u>E.g.</u>, <u>United States v. Rybicki</u>, 354 F.3d 124, 129 (2d Cir. 2003) (en banc) ("[O]ne whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness.").  A court should uphold an as-applied vagueness challenge only if the statute is impermissibly vague in all of its applications and should examine the defendant's conduct before analyzing its application to other hypothetical situations.  <u>Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 494-95 (1982).  Even if a statutory phrase might be vague as applied to extreme situations, that does

not make it void in cases where a defendant's conduct falls within the statute's prohibitions. <u>United States v. Amer</u>, 110 F.3d 873, 878 (2d Cir. 1997). The test is whether the statute gives a person of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. <u>Farrell v. Burke</u>, 449 F.3d 470, 485 (2d Cir. 2005); <u>see also</u> <u>Rybicki</u>, 354 F.3d at 132.

Here, the statutory phrase "in relation to or contemplation of" provides such adequate notice and thus is not impermissibly vague. Both "in relation to" and "in contemplation of" are terms that are frequently used in criminal statutes and have commonly understood meanings. According to the Supreme Court, the phrase "in relation to" is expansive and means "with reference to" or "as regards." <u>Smith v. United States</u>, 508 U.S. at 237 (<u>quoting</u> <u>Webster's</u> <u>New</u> <u>International</u> <u>Dictionary</u> at 2102). Just as the Supreme Court construed this phrase in the statute imposing specific penalties where a firearm is used in relation to a drug trafficking offense, the use of "in relation to" in § 1519 clarifies that, at a minimum, the destructive conduct must have some purpose or effect with respect to a federal investigation or the proper administration of any matter, and not be the result of an accident or coincidence. <u>See</u> <u>id.</u> at 238. Similarly, "in contemplation of" is commonly understood as meaning something that is envisioned or anticipated. <u>Webster's</u> <u>Third</u> <u>New</u> <u>International</u> <u>Dictionary</u> at 491 (1981).

Based on this common understanding of "in relation to" and "in contemplation of," a person of ordinary intelligence is given a reasonable opportunity to understand that destroying a tangible object with the intent to obstruct a federal investigation, or doing so with reference to, or with the purpose of effecting, a federal investigation, or in anticipation of, or envisioning, such an investigation, is prohibited, but that doing so coincidentally is not.  Thus, because the allegations in the indictment indicate that Russell's destructive act was done with the purpose of effecting, or with an expectation that, a federal investigation might ensue, his alleged conduct falls within the prohibitions of the statute and it is not void for vagueness as applied.

Moreover, Russell mistakenly argues that because § 1519 does not require a defendant to act corruptly, i.e., with an improper purpose, it does not have a mens rea requirement.  The scienter requirement of § 1519 is that a defendant act knowingly.  18 U.S.C. § 1519 ("a person who knowingly ... destroys ... [a] tangible object ...."); see Arthur Anderson LLC v. United States, 544 U.S. 696, 705 (2005) (noting that "knowingly" is a mens rea requirement).  The term knowingly is "normally associated with awareness, understanding, or consciousness."  Id.  Criminality under § 1519 is thus limited to individuals who act with consciousness of wrongdoing and this "sensibly allows [§ 1519] to

reach only those with the 'level of culpability ... usually require[d] in order to impose criminal liability.'" <u>Arthur Anderson</u>, at 706 (<u>quoting</u> <u>United States v. Aguilar</u>, 515 U.S. 593, 602 (1995)). Thus, the scienter requirement of § 1519 also eliminates any statutory vagueness concerns. <u>See</u> <u>United States v. Konstankakos</u>, 121 Fed. Appx. 902, 904 (2d Cir. 2005) (noting that a mens rea requirement in a statute normally suffices to avoid condemnation under a void for vagueness challenge); <u>Advance Pharm., Inc. V. United States</u>, 391 F.3d 377, 397 (2d Cir. 2004) (same).

Because liability under § 1519 is imposed "only for an act knowingly done with the purpose of doing that which the statute prohibits, a defendant cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." <u>United States v. Welch</u>, 327 F.3d 1081, 1096 (10th Cir. 2003) (<u>quoting</u> <u>Screws v. United States</u>, 325 U.S. 91, 102 (1945)). Russell's void for vagueness challenge is meritless.

<u>CONCLUSION</u>

For the foregoing reasons, Russell's motions to dismiss the indictment [docs. ## 13 and 15] are DENIED.

SO ORDERED this 22nd day of August, 2007 at Bridgeport, Connecticut.

/s/_____
          Alan H. Nevas
          United States District Judge